ROYAL INS. CO., LIMITED, OF LIVERPOOL, ENG., v. KLINE BROS. & CO.

LONDON & LANCASHIRE FIRE INS. CO. v. SAME.

(Circuit Court of Appeals, Second Circuit. May 13, 1912.)

Nos. 214, 215.

INSURANCE (§ 335*)—AVOIDANCE OF POLICY FOR BREACH OF CONDITION—IRON-SAFE CLAUSE—INVENTORY.

The provision of the iron-safe clause in a fire insurance policy on merchandise requiring the insured to take a complete itemized inventory within 30 days, if one shall not have been taken within the preceding year, otherwise the policy shall be void at the end of said 30 days, is a valid condition subsequent, a failure to comply with which will avoid the pol-

icy, and the keeping of books containing a record of purchases and sales, in compliance with another requirement of said clause, does not dispense with the necessity of taking such inventory.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 852, 853; Dec. Dig. § 335.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Actions at law by Kline Bros. & Company against the Royal Insurance Company, Limited, of Liverpool, England, and same against the London & Lancashire Fire Insurance Company. Judgments for plaintiff, and defendants bring error. Reversed.

For opinion below, see 192 Fed. 378.

Cardoza & Nathan (Edgar J. Nathan and T. A. Hammond, of counsel), for Royal Ins. Co.

Hartwell Cabell, for London & Lancashire Ins. Co.

Fried & Czaki (Frederick M. Czaki, of counsel), for defendants in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. This is a writ of error to a judgment entered on a verdict in favor of the plaintiff directed by the court. The action was to recover for loss by fire of tobacco insured by the defendant. Many questions have been argued by counsel which need not be considered because the case must be reversed for failure of the insured to perform the warranty known as the iron-safe clause, which is as follows:

"Iron-Safe Clause Warranty to Keep Books and Inventories and to Produce Them in Case of Loss.

"The following covenant and warranty is hereby made a part of this policy:

"(1) The assured will, at least once in each calendar year, take a complete itemized inventory of stock on hand, showing the different grades and brands, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured, the unearned premium from such date shall be returned.

"(2) The assured will keep a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, and an itemized record showing each grade of tobacco manufactured and on sale, and shipments of same by grades, from date of inventory, as provided for in first section of this clause, and during the continuance of this policy.

"(3) The assured will keep such books, record of grades, and inventory, also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually opened for business, or, failing in this the assured will keep such books, inventories and record of grades in some places not exposed to a fire which would destroy the aforesaid building. In the event to produce such set of books, inventories and record of grades for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

The policy sued on was issued July 20, 1908. The fire occurred March 19, 1909. The plaintiff had not been in existence for 12

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

months before that date, and no inventory had been previously taken. Therefore, under the first paragraph of the iron-safe clause, it was the duty of the insured to take an inventory on or before August 19th, and under the second paragraph to keep books which should present a complete record of the business from the date of the inventory, and under the third paragraph to keep the inventory and books in a securely locked iron safe. The failure to take an inventory makes the policy null and void. It is a condition subsequent preventing recovery if relied upon by the defendant. When the parties to the contract have agreed upon such covenants, courts have no right to inquire into the reason for them or to qualify them or to ignore them. Imperial Fire Ins. Co. v. Coos County, 151 U. S. 452, 462, 14 Sup. Ct. 379, 381 (38 L. Ed. 231):

"Contracts of insurance are contracts of indemnity upon the terms and conditions specified in the policy or policies, embodying the agreement of the parties. For a comparatively small consideration the insurer undertakes to guaranty the insured against loss or damage, upon the terms and conditions agreed upon, and upon no other, and when called upon to pay, in case of loss, the insurer, therefore may justly insist upon the fulfillment of these terms. If the insured cannot bring himself within the conditions of the policy, he is not entitled to recover for the loss. The terms of the policy constitute the measure of the insurer's liability, and, in order to recover, the assured must show himself within those terms; and if it appears that the contract has been terminated by the violation on the part of the assured, of its conditions, then there can be no right of recovery. The compliance of the assured with the terms of the contract is a condition precedent to the right of recovery. If the assured has violated, or failed to perform the conditions of the contract, and such violation or want of performance has not been waived by the insurer, then the assured cannot recover. It is immaterial to consider the reasons for the conditions or provisions on which the contract is made to terminate, or any other provision of the policy which has been accepted and agreed upon. It is enough that the parties have made certain terms, conditions on which their contract shall continue or terminate. The courts may not make a contract for the parties. Their function and duty consist simply in enforcing and carrying out the one actually made."

The provision of the iron-safe clause requiring the keeping of an inventory was considered in Southern Ins. Co. v. Knight, 111 Ga. 622, at pages 629, 630, 36 S. E. 821, at page 824 (52 L. R. A. 70, 78 Am. St. Rep. 216). The court said:

"It appears from the plaintiffs' testimony that they had not taken an inventory of the stock of goods which was covered by the policy within 12 months prior to the date of the policy, nor did they take one within 30 days after the date of its issuance. The plaintiffs introduced evidence tending to prove that the insurance was written on the very first day they opened their store, and that they had on hand that day the invoices representing all purchases made by them, and that every article contained in the invoices was on that day in the store, and that they exhibited such invoices to the agent of the company who wrote the policy. It is contended by the plaintiffs that this was at least a substantial compliance with that portion of the iron-safe clause which required an inventory, and that, as loss occurred within less than 12 months from the date the policy was written, they are not precluded from recovering on the policy merely because they failed to take an inventory within 30 days. A clause of the character designated in the policy as the 'iron-safe clause' has been held by this court to be valid, and to constitute a warranty and not a mere representation. Scottish Union Co. v. Stubbs, 98 Ga. 754 [27 S. E. 180]. In the opinion in that case, Mr. Chief Justice Simmons uses this language: 'This clause constitutes a promissory

warranty. It binds the assured to do certain things for the protection of the insurer, and is important as providing a check against fraud on the part of the assured, and a mode by which the insurer may ascertain for itself the extent of the loss; and the compliance of the assured with this part of the contract is a condition upon which, by the express terms of the contract, the validity of the policy is made to depend.' The precise question presented for decision is whether a collection of invoices covering every article embraced within a stock of merchandise on a given day is an inventory of such stock within the meaning of the clause above quoted. In other words, was the insurer bound to treat these invoices, when exhibited to it, as an inventory of the goods?" .

The court went on to hold that a collection of invoices could not be regarded as an inventory, and that invoices could not be understood to state the actual value of the merchandise invoiced, which is a necessary feature of an inventory.

We see nothing in Ætna Ins. Co. v. Johnson, 127 Ga. 491, 56 S. E. 643, 9 L. R. A. (N. S.) 667, 9 Ann. Cas. 461, or Ætna Ins. Co. v. Lipsitz, 130 Ga. 170, 60 S. E. 531, 14 Ann. Cas. 1070, inconsistent with Southern Ins. Co. v. Knight, supra. In the former the covenant to keep books was held not performed because some of the items in the merchandise account simply stated, "Thatcher's bill, $31.00," "Allen's bill, $24.75," etc., without indicating what goods were added to the stock. It was, however, pointed out that, the warranty not stating exactly what kind of books or entries should be kept, the question always would be whether those kept did, having reference to the character of the business, substantially give the information that was intended to be covered. In the latter case an inventory was kept, and the court held that the record did not sustain the allegation that a part of it was in Hebrew.

The plaintiff contends that it did substantially perform its warranty as to an inventory, because its' books show exactly what goods were on hand and destroyed at the time of the fire. At the trial it produced small books showing the actual weight of all raw tobacco received and weekly reports sent to the New York office from another book which was destroyed, showing the number of bales made, with their grades and brands. At the time of the fire all the tobacco received had been baled. But the weight of the bales (except those actually sold, which were the smallest part) were merely estimated. Conceding that the iron-safe clause did not call for values, but only for grades and brands, there was still no inventory made within 30 days from the date of the policy, as required by its first paragraph. At best the books produced can only be regarded as conforming to the requirements of the second paragraph. We think it an inevitable conclusion, although a very hard one, that the plaintiff cannot recover. The case is not like Liverpool & London & Globe Ins. Co. v. Kearney, 180 U. S. 132, 21 Sup. Ct. 326, 45 L. Ed. 460, in which it appeared that the insured did take an inventory and keep the books required in an iron safe, but that in removing them from the safe for the sake of their preservation, the inventory, without fraud or negligence, was lost or left in the safe and destroyed. Mr. Justice Harlan said:

"Nor do the words 'or in some secure place not exposed to a fire which would destroy the house where such business is carried on' necessarily mean

that the place must be absolutely secure against any fire that would destroy such a house. If, in selecting a place in which to keep their books and last inventory, the insured acted in good faith and with such care as prudent men ought to exercise under like circumstances, it could not be reasonably said that the terms of the policy relating to that matter were violated. Indeed, upon the facts stated, the plaintiffs were under a duty to the insurance company to remove their books and inventory from the iron safe, and thereby avoid the possibility of their being destroyed in the fire that was sweeping towards their store, provided the circumstances reasonably indicated that such a course on their part would more certainly protect the books and inventory from destruction than to allow them to remain in the safe. If they believed, from the circumstances, that the books and inventory would be destroyed by the fire if left in the safe, and if, under such circumstances, they had not removed them to some other place, and the books or inventory had been burned while in the safe, the company might well have claimed that the inability of the insured to produce the books and inventory was the result of design or negligence, and precluded any recovery upon the policies. We are of opinion that the failure to produce the books and inventory referred to in the policy means a failure to produce them if they are in existence when called for, or if they have been lost or destroyed by the fault, negligence, or design of the insured. Under any other interpretation of the policies, the insured could not recover if the books and inventory had been stolen, or had been destroyed in some other manner than by fire, although they had been placed 'in some secure place not exposed to a fire' that would reach the store. If the plaintiffs had the right, under the terms of the policy, as undoubtedly they had, to remove their books and inventory from the safe to some secure place not exposed to a fire whi might destroy the building in which they carried on business, surely it was never contemplated that they should lose the benefit of the policies if, in so removing their books and inventory, they were lost or destroyed, they using such care on the occasion as a prudent man, acting in good faith, would exercise. A literal interpretation of the contracts of insurance might sustain a contrary view, but the law does not require such an interpretation. In so holding, the court does not make for the parties a contract which they did not make for themselves. It only interprets the contract so as to do no violence to the words used and yet to meet the ends of justice."

The judgment is reversed.