HOME INS. CO. OF NEW YORK v. WILLIAMS.

(Circuit Court of Appeals, Fifth Circuit. November 13, 1916.)

No. 2935.

1. INSURANCE ⬯336(6)—FIRE POLICIES—CONSTRUCTION:
   A fire policy contained a clause declaring that it should be void, unless otherwise provided by agreement indorsed thereon, if the insured should procure other contracts of insurance on the property covered. To the policy was attached before delivery a so-called rider containing an iron safe clause, and reciting that no additional insurance was permitted unless amounts were inserted by the agent of the company in the blank space left, in which there was an insertion of the amount of $8,500. *Held* that, as overinsurance by concurrent policies tends to cause carelessness and fraud, the addition of the rider to the policy did not abrogate the provision that concurrent insurance should avoid it; the rider itself recognizing that provision.
   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 871; Dec. Dig. ⬯336(6).]

2. INSURANCE ⬯336(6)—FIRE POLICIES—CONSTRUCTION.
   In such case, though concurrent insurance to the amount of $8,500 was authorized by the rider, the obtaining of concurrent insurance to a greater amount would forfeit the policy.
   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 871; Dec. Dig. ⬯336(6).]

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. INSURANCE ⬚668(4)—JURY QUESTION—QUESTIONS OF LAW.

In an action on a fire policy, where the defense was noncompliance with the iron safe clause requiring insured to keep in an iron safe such a set of books as would enable the insurer to determine therefrom the stock of goods on hand at the time of the fire without recourse to oral testimony, and the facts as to the books kept were undisputed, the question whether they complied with the policy was one of law for the court.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1735–1740, 1758–1760; Dec. Dig. ⬚668(4).]

4. INSURANCE ⬚335(4)—FIRE POLICIES—IRON SAFE CLAUSE—COMPLIANCE.

A policy on a stock of goods contained an iron safe clause obligating the insured to keep such a set of books as would enable the insurer to determine therefrom with reasonable accuracy the stock of goods on hand at the time of the fire without recourse to oral testimony, save as to the method of keeping the books, which were at night to be kept locked in a fireproof safe and at all times when the building was not open for business. Insured's cash sales book was destroyed by fire, and to prove his loss he introduced the book in which his account with a bank was kept, showing deposits of money, the amounts of checks drawn, and to whom payable, and the wholesale book, giving the names of sellers and the amounts paid. The wholesale book did not show the nature of the purchases, and, though insured was engaged in other businesses, his bank book did not show whether the funds were derived from his mercantile business or not. Held that, while oral testimony was admissible to show the method of bookkeeping, no particular method being required, there was no compliance with the iron safe clause; the books produced being insufficient, without oral testimony, to show the amount of goods on hand at the time of the fire.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 853; Dec. Dig. ⬚335(4).]

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Action by P. W. Williams against the Home Insurance Company of New York. There was a judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

B. P. Crum, of Montgomery, Ala., and W. W. Callahan and A. J. Harris, both of Decatur, Ala., for plaintiff in error.

Alexander C. Birch, of Birmingham, Ala., for defendant in error.

Before PARDEE and WALKER, Circuit Judges, and CALL, District Judge.

CALL, District Judge. In April, 1915, P. W. Williams brought suit in the Morgan county law and equity court against the Home Insurance Company on a policy of insurance theretofore issued to him for $5,000, covering the fixtures, etc., in his store and the stock of merchandise usually kept in a general retail store. By appropriate proceedings the case was removed to the United States District Court for the Northeastern Division of the Northern District of Alabama.

The defendant thereupon filed its answer to the complaint, setting up defenses as follows: (1) That it was not indebted, to that part of the complaint seeking to recover $3,500 for the loss of the stock of merchandise. (2) That the policy was void if additional insurance was

taken out, unless indorsed in the blank spaces of the policy by the agent, and that the agent had indorsed in said blank space a permit for $8,500 additional insurance on the stock of merchandise; that the plaintiff had taken out additional insurance on said stock for $9,000, and permission for said additional insurance was not by the defendant or any one authorized to bind it, indorsed on or attached to the policy sued on. (3) That the policy contained the iron safe clause, which contained the warranty to keep such books, which will clearly and plainly present a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit, from the date of inventory provided for and during the continuance of this policy; and that the assured would keep such books and inventory securely locked in a fireproof safe at night, and at all times when the building was not open for business, or, failing in this, the assured will keep said books and inventory in some place not exposed to a fire which would destroy the aforesaid building. In the event of failure to produce such books and inventories for inspection of the company, this policy shall be null and void, and constitute a perpetual bar to any recovery thereon. That the warranty was breached, in that plaintiff did not keep locked in his safe at night, or other secure place, as required by said warranty, a set of books as required, but the book containing the cash sales from January 1, 1914, to October 16, 1914, was left out of said safe and was burned. (4) That the iron safe clause was breached, in that plaintiff did not keep in his safe or other place as required in said warranty, any book or books which presented a complete record of his cash sales from the date of his inventory up to the time of the fire. (5) That after the fire the defendant demanded of the plaintiff the books kept by him in his business, as required in the warranty, and the plaintiff failed to produce any books showing his cash sales from January 1 to October 14, 1914. (6) That the plaintiff breached the warranty, in that the plaintiff failed to produce any book or books which showed a complete record of purchases of goods made by him between the issuance of the policy and the date of the fire.

The plaintiff demurred to the second plea as to overinsurance, and filed nine replications to the pleas separately and severally; the first that the matters set up in said pleas were untrue, and the other eight setting up substantial compliance and waiver by the defendant.

The defendant demurred to all of said replications, except the first, and the plaintiff amended its fifth replication, the substance of which it is not necessary to set out. Thereupon the defendant filed rejoinders to replications 5, 7, and 8, and also an amended rejoinder. The plaintiff demurred to these rejoinders. Plaintiff's demurrer to defendant's second plea was sustained.

Issues were joined on the complaint, the general issue and special pleas 3, 4, 5, and 6, plaintiff's general replication and special replications 7, 8, and 9 to defendant's special pleas 3, 4, 5, and 6, and defendant's rejoinders 4 and 5 to plaintiff's special replications 7, 8, and 9. The fifth rejoinder set up a nonwaiver agreement.

Upon these issues the case went to trial, and a verdict and judgment

in favor of the plaintiff in the sum of $4,932.95 resulted. From this judgment the defendant prosecutes this writ of error.

There are 22 assignments of error, but it will not be necessary for this court to examine all of them. Those necessary to be examined will be noticed as the opinion proceeds.

[1] The first assignment discussed in plaintiff in error's brief is the second in the assignments filed. It is:

(2) The said court erred in sustaining plaintiff's demurrer to. the defendant's plea numbered 2.

This plea set up that the insured, by indorsement in the blank spaces left in the policy for that purpose, obtained permission to take out $8,500 additional insurance on stock, and the insured had taken out $9,000 additional insurance; setting out the different policies and in what companies.

The plaintiff demurred to this plea on four grounds: (1) Because said plea does not present a defense in law. (2) Because it appears in said plea that the condition and warranty was not breached. (3) Because it appears from said plea concurrent insurance was authorized under the terms of the policy, and that no penalty attaches when concurrent insurance is authorized. (4) Because there is no inhibition against excessive insurance when any insurance is concurrently authorized.

The third and fourth grounds are especially relied upon by the defendant in error to sustain the court's ruling, and we suppose those two grounds were stressed in the argument before the trial court. The policy of insurance in this case contained the following provision in the body of the policy:

"This entire policy, 'unless otherwise provided by agreement indorsed hereon or added' hereto, shall be void if the insured now has or shall hereafter make or procure any other contracts of insurance, whether valid or not, on property covered in whole or in part by this policy."

To this policy before delivery was attached what is designated as a rider, in which was contained the iron safe clause and the following:

"No additional insurance permitted unless amounts were inserted by agent of this company in the blank spaces noted below, viz.: $8,500 on stock.".

The contention of counsel for plaintiff below is that the rider supersedes the contract of forfeiture in the body of the policy, and, the rider containing no provision to make the policy void, overinsurance cannot be visited with forfeiture. Ordinarily provisions for forfeitures are not favored. Justice Shiras, in Northern Assurance Co. v. Building Association, 183 U. S. at page 317, 22 Sup. Ct. at page 136, 46 L. Ed. 213, in speaking of a similar provision in a policy, says:

"Overinsurance by concurrent policies on the same property tends to cause carelessness and fraud, and hence a clause in the policies, rendering them void in case other insurance had been or should be made upon the property and not consented to in writing by the company, is customary and reasonable."

This policy specifically provided, in substance, this same provision, and attached thereto is a rider specifying the amount of additional insurance and upon what property it might be taken. This rider was

made and became a part of the policy, with the same force as if the terms of it had immediately followed the provision for forfeiture, and must be construed together with the policy to which it was attached, and of which it became a part.

In the light of the language used by Justice Shiras, above quoted, we think the plain language used in the policy should be given effect. The very language used in the rider shows clearly that the company did not abrogate the provisions in the body of the policy, but gave notice to the insured that it insisted upon it. We refer to the language preceding the clause allowing the additional insurance, to wit:

"This insurance is effected subject to the following conditions, which are hereby made warranties by the assured and are accepted as parts of this contract."

See Queen Insurance Co. v. Young, 86 Ala. 430, 5 South. 116, 11 Am. St. Rep. 51.

[2] It is also contended by counsel for plaintiff below that, the company having given authority for concurrent insurance, the amount of such insurance is of no moment, and the company cannot object to overinsurance. We think this position not well taken in the light of the adjudged cases, and considering the object of the clause and the reasons inducing the company to incorporate it in its policies. Northern Assurance Co. v. Grandview Assn., 183 U. S. 317, 22 Sup. Ct. 133, 46 L. Ed. 213; Works, Pritchett & May v. Springfield F. & M. Ins. Co. (Tex. Civ. App.) 79 S. W. 42; Senor v. Western Millers Mut. F. Ins. Co., 181 Mo. 104, 79 S. W. 690; Gross v. Colonial Assurance Co., 56 Tex. Civ. App. 627, 121 S. W. 517; Home Insurance Co. v. Morrow, 145 Ala. 284, 39 South. 587. We are therefore of opinion that error was committed in sustaining the demurrer to the second plea.

[3, 4] Issues were presented by the pleas that the iron safe clause was violated and the plaintiff therefore could not recover because of the several matters in said pleas set out. The principal contention before this court was that the evidence showed without contradiction that the plaintiff below had violated the warranties contained in the iron safe clause, because, first, he had not produced a set of books showing the cash sales from January 1 to October 14, 1914; and, second, he failed to produce any books showing a complete record of purchases between the issuance of the policy and the date of the fire.

The evidence shows that after the fire the adjuster of the defendant below went to the plaintiff and demanded his books, and was then informed that the cash sales book from January 1 to October 14, 1914, had been destroyed by the fire that consumed his stock of goods. This fire occurred at night, or the early morning of Sunday. The testimony showed that the plaintiff, in addition to his mercantile business, was engaged in selling mules, buggies, and wagons, and bought and sold cotton in the early part of 1914. To prove his loss the plaintiff produced, in lieu of the cash sales book burned, a book in which his account with the First National Bank was kept, showing deposits of money; the amounts of such deposits being shown, and

the amounts of checks drawn, and to whom payable. The testimony showed that the plaintiff had but the one bank account, into which all his deposits were made. The book did not show for what purpose nor to pay what account the checks were given. The book of bills payable produced was equally silent on these points. The wholesale book produced and filed in evidence did not show the character of the goods the plaintiff had purchased. A sample of the entries is contained in the bill of exceptions, as follows:

Cahaba Southern Coal & Mining Company.

1914.
August 29th.  By bill.....................................          $117.10
Nov.   11th.  By check................................$50.00
Dec.   15th.  By check................................$25.00

In each instance the debit was designated "By bill," and there was nothing to show the character of the goods purchased, except it be by the name of the firm preceding the account. The plaintiff had all the books he kept except his cash sales book from January 1 to October 14, 1914, and this bank pass book, which were burned in the fire that destroyed the stock. These books were his account against the First National Bank, his cash sales book from October 16th to the date of the fire, his ledger, showing his charge sales, payments on same, and his expense account, and his inventories. His cash sales book from January 1 to October 14, 1914, his check book, with the stubs, showing the money paid out by him, and his invoices, showing the kind of goods which he had received during the year, were not kept in the safe and were burned.

The fourteenth assignment of error challenges the correctness of the court's oral charge as follows:

"It is for you to determine whether that was sufficient to enable the company to arrive at the value and amount of the stock on hand at the time of the fire."

The twentieth assignment of error is the refusal of the court to give the peremptory instruction requested, to wit:

"If the jury believe the evidence, you should find for the defendant."

The question raised on the issues by the brief of the plaintiff in error is: Do the books kept by the plaintiff and produced by the insured enable the defendant to reasonably arrive at the amount of the loss? There is no dispute as to the books produced and their character. If they do not enable the defendant to reasonably arrive at the amount of the loss, then it was error for the court to leave to the jury to say whether such books were sufficient. The facts being undisputed, it becomes a matter of law for the court. Houff & Holler v. German American Ins. Co., 110 Va. 585, 66 S. E. 834.

The iron safe clause obligated the insured to keep such a set of books as would enable the insurer to determine from the books and papers submitted to him with reasonable certainty the stock of goods on hand at the time of the fire without recourse to oral testimony, except as to the method of keeping said books. No particular method

of bookkeeping is required, but the books must themselves furnish the information with reasonable certainty, unaided by oral testimony, except as above indicated, to explain the method of keeping them. We apprehend there will be no question of this principle. Outside evidence may be received, the surrounding circumstances, the subject-matter, the location and character of the business, the method of keeping the books, and the evidence of expert bookkeepers to explain the entries found in the books and as to what the books themselves show. But such oral testimony cannot be received to supply omissions in said books.

The rule is well established that substantial compliance is all that is necessary to meet the requirements of this clause; and this phase of the case will be examined with these principles in mind. The witness Merriweather testified that, apart from what the insured had told him, he could not have arrived at the valuation of the stock at the time of the fire from the books. He further says that, if he had had the cash sales book with the books produced, he could have arrived at it. Therefore the statements of the insured, made from memory, explaining the deposits in the account with the bank, together with the books, was the basis of the calculation by which the amount of stock was ascertained. This is not a substantial compliance with the iron safe clause. Again, the book of purchases produced, showing purchases only by the entries "By bill," with no description, general or otherwise, of the goods purchased, is not a substantial compliance with said clause. Everett-Ridley Co. v. Traders' Ins. Co., 121 Ga. 228, 48 S. E. 918, 104 Am. St. Rep. 99; Royal Ins. Co. v. Kline Bros., 198 Fed. 471, 117 C. C. A. 228.

We are therefore of opinion that the trial court erred in giving the oral charge excepted to, and in its refusal to give the peremptory charge requested.

For the errors pointed out, the case is reversed and remanded, with instructions to overrule the demurrer to the second plea, and for such further proceedings as are consonant with this opinion.