SUCCESSORS OF HOMAR, COLOM & Co., LTD. ET AL., Plaintiffs and Appellants, *v.* BRITISH AMERICA ASSURANCE Co., Defendant and Appellee.—SUCCESSORS OF HOMAR, COLOM & Co., LTD. ET AL., Plaintiffs and Appellants, *v.* NORTH BRITISH & MERCANTILE INSURANCE Co., Defendant and Appellee.—SUCCESSORS OF HOMAR, COLOM & Co., LTD. ET AL., Plaintiffs and Appellants, *v.* THE WESTERN ASSURANCE Co., Defendant and Appellee.

Nos. 4013, 4014, 4015. Argued March 23, 1927, and May 21, 1928.—Decided November 13, 1928.

*López de Tord & Zayas Pizarro* for the appellants.  *José Sabater* for the appellees.

MR. JUSTICE TEXIDOR delivered the opinion of the court.

Successors of Homar, Colom & Co., a mercantile partnership established in Ponce, and Domingo Carles, a merchant of the same city, filed three complaints in the District Court of Ponce against the following fire insurance companies authorized to do business in Porto Rico: British America Assurance Co., North British & Mercantile Insurance Co., and The Western Assurance Co., for the amount of the insurance policies on the stock of goods of Domingo Carles which was destroyed by fire on June 27, 1924, and had been insured by the defendant companies.

The insurance policies referred to in the complaints contain, as part of the contract, the following:

"This policy shall become null and void and the company shall be relieved from all liability under it unless the assured strictly complies with the following conditions which are hereby made part of this policy and are mutually agreed and accepted.

"1st.  The Assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such

inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days from the issuance of this policy, or this policy shall be null and void from such date and upon demand of the Assured the unearned premium from such date shall be returned.

"2nd. The Assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, and during the continuance of this policy.

"3rd. The Assured will keep such books and inventory, and also the last preceding inventory if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or failing in this, the Assured shall keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building. In the event of failure to produce such set of books and inventories for the inspection of this Company, in the place where the policy is issued, this policy shall become null and void and the company relieved from all liability under it and the Assured barred from making any claim or bringing any judicial action for the recovery of any loss or damage under this policy."

The insurance policies had been indorsed in favor of Successors of Homar, Colom & Co. as creditors of Domingo Carles.

The defendants answered, admitting the insurance policies and the fire but controverting the amount of the stock of goods and the value put thereon in the complaints, and alleged that the plaintiffs had failed to comply with the conditions of the insurance policies, specially in regard to the keeping of the books in an iron safe and submitting them to the defendants for the purpose of a true assessment of the loss, nor had the plaintiffs shown or tried to show the amount thereof, or complied with the stipulations above transcribed, and that for such reasons the insurance policies referred to in the complaints had become null and void.

The cases were consolidated and heard as a single case by the lower court.

The trial judge, on rendering judgment, delivered an opinion containing his conclusions and points of view both

as to the facts and the law. From a reading of the opinion and the judgment we find the following:

1. The trial judge found that Domingo Carles had failed to keep his books in a fireproof safe.

2. The trial judge found that the plaintiff had failed to comply with the conditions of the policies as to the proof of loss, the safekeeping of the books or even with the manner of keeping them.

3. The trial judge found from the evidence that the plaintiff Domingo Carles had left his establishment on the day of the fire, leaving the iron safe, where he usually kept his books, unlocked and the books exposed to destruction.

4. The trial judge found that the books of Domingo Carles had been taken, after the fire, to Ponce and delivered to a third person instead of to the insurer.

On the strength of the above statement of facts and the conclusions which plainly and implicity appear therefrom, the district judge rendered judgment in each case dismissing the respective complaint. Those judgments are now appealed from herein.

The appellants assign fifteen errors. They might easily have been reduced in number without any detriment to the appellants as regards the statement and defense of their contentions. An excess in the number of the assignments of error is not beneficial, since it is the quality and not the quantity which influences the appellate courts in their decisions.

Five of the assignments bear directly on the commercial books of Domingo Carles. They are as follows:

"I. The district court of Mayagüez erred in finding that all the commercial books of the assured Domingo Carles had been destroyed by the fire. See pages 24, 25 and 23 of the transcript of the record in the present cases.

"III. The district court of Mayagüez erred in finding that the commercial books of Domingo Carles were completely useless for an investigation and determination of the fire loss; and it erred in failing to find that though such books were not sufficient, the sup-

plementary evidence from the books of Successors of Homar, Colón & Co., Ltd., in compliance with the existing contract and inventory presented, was sufficient to show such loss. See pages 24, 25 and 23 of the transcript of the record in the present cases.

"IV. The district court of Mayagüez erred in finding that the above books did not include all the cash and credit sales, and that some of them begin with totals without any explanation, and that other totals are sometimes greater than the volume of business from the date stated therein until he day of the fire; and likewise that the district court of Mayagüez erred in finding that the data or antecedents in such books could be found in other books of Vicens and Carles which had been destroyed by the fire; and likewise it erred in finding that the burnt books, considering their condition, could not show the volume of business of the assured or the fire loss. See pages 25, 26 and 24 of the transcript of the record in the present cases.

"V. The district court of Mayagüez erred in finding that the appearance of the books destroyed by fire showed that if they were in the safe at the moment of the fire, such safe had been left unlocked and the books exposed to destruction. See pages 25, 26 and 24 of the transcript of the record in the present cases.

"VI. The district court of Mayagüez erred in finding that the plaintiffs had admitted that the burnt books after having been taken to Ponce and delivered to Colom had been wrapped up in copies of the *El Mundo* and that they were in the same wrapper when they were submitted in evidence, but that such newspaper copies turned out to be dated at the end of 1924 and the middle of 1925. See pages 25, 26 and 24 of the transcript of the record in the present cases."

The trial court was perfectly justified in its findings in the premises. We make this statement after having considered the evidence in which are included the books or remnants of books which have been sent up to this court in connection with this appeal. It does not appear from the evidence that the plaintiff kept other books, according to the meaning given to that word in the Code of Commerce, than those the incomplete and shapeless remnants of which have been sent to this court. It is humanly impossible to extract, from an examination of such books, any evidence as to the condition of the business of Domingo Carles, since the fire

destroyed very important parts of the books, and in the matter of commercial books one cannot make statements by surmise or approximation. The so-called books are burnt considerably, at least all their margin is burnt except the part near the binding. The figures in some of the accounts have disappeared so appreciably that it is not possible to make any arithmetical calculation with any degree of accuracy which is the first and essential characteristic of such operations.

It has been likewise shown by the evidence that the plaintiff Carles did not show his sales in any satisfactory manner. This plaintiff has shown by his own testimony that he was unable to give any exact account of the credit sales. It also appears from his testimony that data and antecedents of the books which the plaintiff stated he was keeping appear in accounts and books of Vincens & Carles which were stated to have been destroyed by the fire and which we think should have been preserved in the same manner required by the policy as regards the books of Carles.

No great importance must be attached to the court's mentioning in its opinion that the half-burnt books of Domingo Carles had appeared wrapped up in copies of the newspaper *El Mundo*. The court did not mention that particular as a ground for its opinion. On the other hand, importance must be attached to the fact that the remnants of the books, after the fire, had been sent or delivered to a third person in Ponce instead of being delivered to the agents of the insurance companies who had been informed by the plaintiff that they had been rendered useless by the fire. So that the plaintiff Carles, by failing to deliver such papers, no matter the extent of their burning, violated the binding clauses of a contract, which clauses stipulated as a kind of civil penalty the voidance of the policy in case of failure to comply therewith. The decision of this assignment of error decides also in part negatively the assignment number II.

The trial court maintained that the books of Successors

of Homar, Colom & Co. could not show the fire loss of Domingo Carles. It is true that the latter alleged that all his purchases were made from that firm. But the evidence as to his purchases from and his payments to the above firm is not the proof of the condition of his business, because Carles used to sell for cash and on credit to other purchasers, and moreover he had to carry his overhead and other accounts. No matter how intimate might be the connection of a merchant with a third person, the latter's books are not the proof of the condition of the business of the merchant.

The assignment of error under number V. lacks importance.

It is undeniable that the finding of the trial court was that the commercial books of Domingo Carles had not been burnt inside the iron safe; but if they had been so burnt then the safe must have been unlocked for the fire to produce such effects.

It is sufficient to read the testimony of the expert Angel Pesquera to come to the same conclusion as the district court of Mayagüez. After the testimony of the above expert it cannot be admitted that books enclosed in an iron safe properly locked can be burnt or consumed by a fire such as the one in the case at bar. There is against that possibility a physic law, constant and invariable, the necessity of oxygen referred to by the expert in his testimony. The conclusion of the court was correct.

We must now bear in mind the decisions of this court in the cases of *Rodríguez v. United States Fire Insurance Co. of New York,* 34 P.R.R. 370; *Quiñones v. L'Union,* 34 P.R.R. 388, and *Compañía Mercantil Arroyana v. The Home Insurance Company,* 35 P.R.R. 623.

In the decision in the case of *Rodríguez v. United States Fire Insurance Co.,* in speaking of the account books alleged by the appellant to have been kept, this court said:

"The book that he kept could give no exact idea of the stock of goods at the time of the fire. In it the purchases were entered, but

not the sales, and these entries showed neither the kind nor the amount of the articles purchased.''

In that decision the following appears:

"The trial court declared also that the plaintiff did not comply with the clause that imposed upon him the obligation of keeping the account books and inventory in a fireproof safe (iron-safe clause), and its conclusion, which likewise we consider a correct expression of the facts proved, is as follows:

" 'That the plaintiff did not comply with the clause of the insurance contract on ''account books and inventory in fireproof safe'' (iron-safe clause), and this is deduced from testimony of the plaintiff and his employees. In the establishment only one book was kept, and this in such an irregular manner and so carelessly that it could not be called in any way an ''account book'' for the purpose of complying with the said clause of the policy.' ''

In the decision in the case of *Compañia Mercantil Arroyana* v. *The Home Insurance Co., supra,* this court said:

"A complete record of the business transacted and of the stock of flour on hand at any time was not shown by the appellee. A similar clause requiring a set of books in which all of the business transacted should appear, including all purchases and sales both for cash and on credit, and the last inventory taken of the business, was construed in the case of *Rodríguez* v. *U. S. Fire Ins. Co.,* 34 P.R.R. 370, wherein it was held that the evidence introduced, which was more or less the same as that in this case, was insufficient. A sound and reasonable interpretation of the same clause is to be found in *Home Insurance Co. of New York* v. *Williams,* 237 Fed. 171, 176, wherein the doctrine laid down is as follows:

" 'The iron safe clause obligated the insured to keep such a set of books as would enable the insurer to determine from the books and papers submitted to him with reasonable certainty the stock of goods on hand at the time of the fire without recourse to oral testimony except as to the method of keeping said books.'

"In the case of *Compañía L'Union de Paris* v. *Goldsmith,* 8 Fed. Rep. (2nd series) 137, the Circuit Court of Appeals for the First Circuit, in referring to a denied instruction that the 'iron safe clause' was valid and binding on the assured, said:

" 'One of the requested instructions, the denial of which is assigned as error, was:

" 'I charge you that the iron safe clause, contained in Exhibits A and B for the defendant, is one of the valid and binding obligations on the part of the insured, the plaintiff; and that you can not find a verdict for the plaintiff, unless you should find first from the evidence before you that there has been a substantial compliance with each and every one of the requirements and conditions of the said 'iron safe clause.' Refused. Defendant excepts. A.F.O.'

" 'This instruction should have been given, and there was error in the refusal to give the same.'

"In the case of *Coggins* v. *Aetna Ins. Co.*, 8 L.R.A. (N.S.) 839, which seems to be very similar, and wherein the insured could not determine from the books the stock on hand at the time of the fire, the Supreme Court of North Carolina said:

" 'There has never been any inventory taken of the goods comprising the stock of this Erastur store, the one covered by the policy. There is not now, and has never been, any data from which such an inventory could be reasonably approximated. The plaintiff himself, testifying to the question, very correctly end properly said: "No, I do not know how much hardware, groceries, and shoes I had." . . . . The court was right, therefore, in holding that on the evidence of plaintiff, there had been a breach of the first stipulation in the "iron safe clause." '

"Applying the same doctrine, it may be concluded that one of the most essential conditions of the policy, whose non-compliance bars any action on the part of the assured, has not been performed, inasmuch as the evidence did not give any accurate idea of the stock of goods on hand at the time of the fire."

And in the decision in the case of *Quiñones* v. *L'Union, supra,* this court said:

"In Joyce on Insurance, 2nd ed., sec. 3275, it is said that stipulations that the insured shall give notice within a fixed time and also furnish the company with proofs of the loss or forfeit the insurance, are reasonable conditions, and when they are inserted in the policy or contained in the charter of the company they are obligatory conditions precedent to any right of action, unless they are waived. In the case of *Masimo* v. *Farmers' & Mech. M. Insurance Co.*, Sup. Ct. Penn. 1912, 84 Atl. 406, it was held that where an insurance policy requires that the insured shall give notice of the losses in writing to the company and such notice is not given the insured cannot recover for the loss without proof of the waiver of that right. In *McCormack*

v. *N. British Ins. Co.*, 78 Cal. 468, it was held that where preliminary proof is required by the insurance policy the insured should allege and prove that such proof had been made or that this requirement was waived. In 33 C. J. 8 and 74 we find that proofs of loss are necessary, notwithstanding the company has actual knowledge of the loss, and that the furnishing of proof of loss as required by the policy is a condition precedent to an action for the loss, in the absence of a waiver or estoppel precluding the company from demanding it, and in the absence of any statute relieving insured therefrom. The case of *Patrick* v. *Farmers Fire Ins. Co.*, 43 N.H. 621, 80 Am. Dec. 197, follows the same rule. It is true that in 26 C. J. 378, it is said that when the loss is total there is no necessity of complying with those requisites, but that rule is based on judgments of the State of Pennsylvania that lay down that doctrine for cases of the total destruction of buildings, distinct from the other States. See Joyce on Insurance sec. 3338.''

The assignment of error which appears under number VI. is really considered and decided by the jurisprudence above quoted. The appellant did not comply, either in fact or in law, with the ''iron safe clause.'' The evidence in the case is convincing in regard thereto; and what some of the witnesses failed to say was eloquently expressed by those burnt papers and books which show that the clause was never complied with either strictly or substantially.

The assignment number VIII. is a repetition, though in different form, of that under number II. already decided.

That under number IX. is a summary of the others which have also been decided.

The judgment appealed from must be affirmed.